UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LEE O. KRAUS,  *Plaintiff and Counterclaim Defendant*, | ) ) ) ) | 3:21-CV-476 (SVN) |
| v. | ) ) | |
| UNITED STATES OF AMERICA,  *Defendant and Counterclaim Plaintiff*. | ) ) ) | August 1, 2022 |

**RULING AND ORDER ON KRAUS' MOTION TO AMEND THE COMPLAINT AND MOTION TO AMEND THE ANSWER**

Sarala V. Nagala, United States District Judge.

Plaintiff and counterclaim Defendant Lee O. Kraus has brought a one-count *pro se* civil action against Defendant and counterclaim Plaintiff, the United States of America ("the United States"), pursuant to 26 U.S.C. § 7422(a). Kraus claimed that certain taxes were erroneously or illegally assessed or collected, and sought a refund and abatement. The United States responded with a one-count counterclaim contending that Kraus' tax liability, penalty, and interest remain unpaid.

Kraus has now filed two motions to amend the pleadings. First, Kraus moves to amend his answer to the United States' counterclaim to add certain affirmative defenses. ECF No. 43. Because the United States consents to the amendment, the Court GRANTS Kraus' motion to amend his answer, in accordance with Fed. R. Civ. P. 15(a)(2).

Second, Kraus moves to amend his complaint to add new claims against the United States, which the United States opposes. ECF No. 47. Specifically, Kraus moves to raise three claims that officers of the Internal Revenue Service recklessly, intentionally, and negligently disregarded the Internal Revenue Code and associated regulations in connection with the collection of his taxes

pursuant to 26 U.S.C. § 7433(a). Kraus also seeks three declarations pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, regarding certain facts underlying his tax liability. The United States contends that all six claims are barred by the doctrine of sovereign immunity. For the foregoing reasons, the Court agrees with the United States and denies the motion to amend, as set forth below.

I. **FACTUAL BACKGROUND & PROCEDURAL HISTORY**

A. Kraus' Association with DPCC

Kraus' original complaint, ECF No. 1, alleges the following facts, which are substantially repeated in the proposed first amended complaint ("FAC"), ECF No. 38. In 2006, Kraus formed a wholly-owned limited liability company, Composite Capital Advisors LLC ("Composite Capital"), registered in Delaware. Compl. ¶ 18. Composite Capital was a consulting company for clients on matters pertaining to engineering and business. *Id.* In 2010, Composite Capital was initially retained by Jose Di Mase, a resident of Italy, to consult on the corporate acquisition of Duraseal Pipe Coatings Company, LLC ("DPCC"). *Id.* ¶ 19.

DPCC was a limited liability company organized under the law of Missouri, and it applied corrosion and abrasion-resistant coatings to tubing used in oil wells. *Id.* ¶ 13. Following the acquisition, Di Mase became the sole managing member and chairman of DPCC. *Id.* ¶ 15. DPCC became wholly owned by DuraSeal Holdings, SRL ("SRL"), an Italian company of which Di Mase was the chairman and president. *Id.* ¶¶ 14–15. In turn, SRL shares were controlled by another company based out of Luxembourg, Holding Development Investment, SA ("HDI"). *Id.* ¶ 16. HDI was owned by a trust, the beneficiary of which was Di Mase and his family. *Id.* In sum, Kraus alleges that DPCC was ultimately owned and controlled by Di Mase. *See id.* ¶ 28.

Di Mase retained Kraus, through Composite Capital, to advise on SRL's acquisition of DPCC and another supplier. *Id.* ¶ 19. As part of the acquisition, Kraus joined SRL's Board of Directors in 2011, though he was one of only two directors on the board not part of the Di Mase family. *Id.* ¶ 20. Around 2012 and 2013, DPCC was experiencing low revenue, and Di Mase, through HDI, retained Kraus "to provide advisory services" regarding DPCC's products and the relevant markets. *Id.* ¶¶ 23–24, 26. Disagreements over Kraus' compensation persisted throughout this period. *Id.* ¶ 27. As part of these unspecified disagreements, Di Mase appointed Kraus to be the chief executive officer ("CEO") of DPCC, allegedly as a way for DPCC to pay Kraus' consulting fees directly. *Id.* ¶¶ 32–33, 35.

Kraus alleges, however, that the CEO title conveyed no authority under DPCC's organizational documents, as Di Mase effectively retained control over financial policy and employment decisions. *Id.* ¶¶ 35–36, 41–42. For example, Kraus alleges that there was one instance when DPCC applied for a loan with Cornerstone Bank, and Kraus executed the loan documents on DPCC's behalf. *Id.* ¶ 85. But Kraus allegedly executed those documents pursuant only to a one-time, limited authorization agreement between him and Di Mase relating to the particular transaction. *Id.*

The administrative functions of DPCC, including payroll and cash flow, were maintained by Christine Brandow, initially employed as the office manager and later promoted to treasurer. *Id.* ¶ 42–43. Kraus alleges that, in April of 2015, Brandow deferred payment of DPCC's payroll taxes. *Id.* ¶ 44. After Brandow informed Di Mase and Kraus of this deferral, Kraus allegedly advised Di Mase against it, but Di Mase "ignored" this advice. *Id.* ¶ 46. Brandow continued deferring DPCC's payroll taxes throughout the remainder of 2015. *Id.* ¶ 48. Kraus' engagement with DPCC ended in December of 2015, and DPCC ceased all operations in 2016. *Id.* ¶¶ 49–50.

B.  IRS' Investigation and Tax Penalty

In 2017, Kraus was interviewed pursuant to Form 4180 by an Internal Revenue Service ("IRS") revenue officer, Janice L. Shain, to investigate liability for DPCC's unpaid payroll taxes. *Id.* ¶ 51. Shain asked Kraus his job title, and he explained that he was the CEO but that the title conveyed no authority under DPCC's operating agreement and that he was actually a consultant. *Id.* ¶ 52.  Shain documented Kraus' response as "CEO." *Id.* ¶ 52.  Shain also asked Kraus "if he determined financial policy for" DPCC, to which Kraus responded that he did not. *Id.* ¶ 53. However, Shain documented Kraus' response as "yes" on the form. *Id.*  Similarly, Shain asked Kraus if he had authority to pay bills, to which Kraus responded that he did not, but she documented his response as "yes" on the form. *Id.* ¶ 54.  In addition, Shain asked whether Kraus had knowledge that the payroll taxes were not paid, to which Kraus answered "yes" because Brandow had informed him of such. *Id.* ¶ 55.  When Shain asked if other individuals had the authority to determine DPCC's financial policy, Kraus named Brandow and Di Mase, however Shain recorded only Brandow's name and not Di Mase's name. *Id.* ¶ 57.

Following this interview, the IRS determined that Kraus was responsible for the withheld taxes—according to Kraus, largely due to his title as CEO. *Id.* ¶¶ 60, 82.  The summary of the determination recites Kraus' response that he was "responsible for determining the financial policy of" DPCC, evidenced by Kraus' signature on DPCC's behalf on the loan documents. *Id.* ¶ 82. The IRS noted that there was no evidence of Kraus' signature on any checks on behalf of DPCC, but concluded that his "position as CEO gave him the status, duty and authority to ensure" that the relevant taxes were paid. *Id. See also* Countercl., ECF No. 24 ¶ 82 (admitting that the complaint contains the correct quotation of the IRS' recommendation for the penalty assessment).

4

Accordingly, the IRS made trust fund recovery liability assessments under 26 U.S.C. § 6672 against Kraus for the final three tax periods in 2015. Compl. ¶ 2; *see also* Countercl. ¶ 21.

Since that date, Kraus has maintained that the assessment of the trust fund recovery penalty (the "penalty") was improper for various reasons. For example, he represents that Shain falsely recorded Kraus' answers during the initial interview. Compl. ¶ 58. In addition, Kraus insists that his signature of the loan documents was pursuant to the one-time, limited scope authorization granted to him by Di Mase. *Id.* ¶ 85.

In the course of settlement discussions during 2019, the IRS provided to Kraus DPCC's tax return dated February 12, 2016. *Id.* ¶ 61. The document purported to bear Kraus' signature, but Kraus alleges that his association with DPCC had ended by that date. *Id.* ¶¶ 61–62. Kraus hired a forensic evidence specialist who determined that his signature on the tax return was forged. *Id.* ¶ 65. Moreover, Kraus alleged that he never handled payroll matters for DPCC, as that fell within Brandow's obligations. *Id.* ¶ 62. Nevertheless, the IRS continued to pursue Kraus for the penalty. *Id.* ¶ 68. Kraus attempted to obtain DPCC's tax return forms for 2015, but the IRS refused to provide those documents. *Id.* ¶ 77.

Kraus also learned, in the IRS' responses to his 2017 requests under the Freedom of Information Act ("FOIA"), that neither Brandow nor Di Mase were contacted by the IRS in the course of the investigation into the withheld taxes. *Id.* ¶¶ 70–72. Kraus subsequently learned that the penalty was assessed against him alone, not against Brandow or Di Mase. FAC ¶ 138.

Finally, Kraus maintains that the DPCC operating agreement conferred no authority associated with the CEO title, and that Missouri law confers no statutory or common law authority on the CEO of a limited liability company beyond the scope of the company's operating agreement. Compl. ¶¶ 89–90, 93. Moreover, Kraus' agreements with Di Mase's various companies

established that he was DPCC's consultant, not an employee of Di Mase or DPCC. *Id.* ¶ 113. To that end, Missouri had assessed a similar penalty under state law, but the penalty was set aside in 2017 after Kraus provided the state agency with the same information he provided to the IRS. *Id.* ¶¶ 94–95.

Kraus made partial payments on the penalty in 2019 and 2020, including through withholding of an income tax refund owed to him. *Id.* ¶ 2; Countercl. ¶ 6. In November of 2020, Kraus filed for bankruptcy as a consequence of the assessment of the penalty and other liabilities arising from his activities at DPCC. *Id.* ¶ 136.

### C. The Present Action

In April of 2021, Kraus filed the original one-count *pro se* complaint against the United States, seeking refund and abatement of the penalty pursuant to 26 U.S.C. § 7422(a). Following a brief stay while Kraus' bankruptcy proceeding remained pending, *see* ECF Nos. 15, 17, the United States filed its answer to the complaint in November of 2021. The United States also filed a one-count counterclaim pursuant to 26 U.S.C. § 6672, seeking payment of the balance of Kraus' penalty, totaling almost $200,000, as well as statutory interest accruing since September of 2021. Countercl., ECF No. 44 ¶ 8.

The case proceeded to discovery, which remains pending. *See* ECF No. 34. The Court's Scheduling Order set a deadline of February 25, 2022, for either party to amend the pleadings. *Id.* at 1. On that date, Plaintiff filed the FAC, ECF No. 38. After the United States objected to the filing of the FAC, *see* ECF No. 40, the Court directed Plaintiff to file a motion to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), *see* ECF No. 41, which Plaintiff has now done. ECF No. 47. The United States filed a memorandum of law opposing the motion to amend. ECF No. 48.

The proposed FAC raises seven counts against the United States. Count One claims civil conspiracy arising from the IRS officers' alleged collaboration with Brandow to ensure that Kraus bore the penalty, for which Kraus claims damages pursuant to 26 U.S.C. § 7433(a). FAC ¶¶ 130, 132, 135, 139. Count Two claims reckless and intentional disregard of the Internal Revenue Code and associated regulations by IRS officers, for which Kraus claims damages pursuant to § 7433(a). *Id.* ¶ 145. Count Three claims negligent violation of the Code and associated regulations by IRS officers, for which Kraus claims damages pursuant to § 7433(a). *Id.* ¶ 148. Count Four seeks a declaration that, pursuant to the DPCC operating agreement, Kraus had no authority to sign bank loan documents on behalf of DPCC. *Id.* ¶¶ 154–55. Count Five seeks a declaration that, pursuant to Missouri law, Kraus' CEO title alone conferred on him no statutory authority or duty to ensure that DPCC's taxes were paid. *Id.* ¶ 162. Count Six seeks a declaration that the IRS did not have a sufficient evidentiary basis on which to time him responsible for DPCC's failure to pay the payroll taxes. *Id.* ¶ 169. Count Seven seeks refund and abatement of the penalty pursuant to § 7422(a), repeating the sole count of the original complaint. *Id.* ¶ 176.

The United States opposes the six new counts proposed in the FAC, arguing that each is futile because they are barred by the doctrine of sovereign immunity. With respect to Counts One through Three, the United States contends that § 7433 does not operate to waive the United States' sovereign immunity in this context for three reasons. First, § 7433 and its associated regulations impose a limitations period which has elapsed. Second, § 7433 and its associated regulations require a plaintiff to first exhaust administrative remedies, which Kraus has not done. Third, § 7433 provides for a civil action arising from the allegedly improper *collection* of taxes, but not Kraus' claim for allegedly improper determination of tax liability. With respect to Counts Four through Six, the United States contends that the Declaratory Judgment Act, 28 U.S.C. § 2201,

provides no waiver of sovereign immunity to permit a plaintiff to obtain a declaratory judgment regarding his federal tax rights or obligations. For the reasons explained below, the Court agrees with the United States.

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 15(a)(2)

The propriety of the present motion to amend the complaint, filed within the time period set by the Court's Scheduling Order, is governed by Federal Rule of Civil Procedure 15(a)(2). That rule provides that a party may amend its pleading with the opposing party's consent or the court's leave, and further provides that the court "should freely give leave when justice so requires." *Id.* Rule 15(a)(2) "is a liberal and permissive standard, and the only grounds on which denial of leave to amend has long been held proper are upon a showing of undue delay, bad faith, dilatory motive, [or] futility." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) (alteration in original; citation and internal quotation marks omitted), *cert. denied*, 142 S. Ct. 1112 (2022).

Relevant here, a proposed amendment is considered futile if it "fails to state a claim or would be subject to a successful motion to dismiss on some other basis." *Nwachukwu v. Liberty Bank*, No. 3:16-CV-704 (CSH), 2016 WL 3647837, at *2 (D. Conn. July 1, 2016) (citing, among others, *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)). *See also Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Germany*, 615 F.3d 97, 99 (2d Cir. 2010) (affirming district court's denial of leave of amend complaint as futile because the proposed amended complaint did not cure the original complaint's subject matter jurisdictional defects); *Blanchard v. Doe*, No. 17-CV-6893 (PKC) (JO), 2019 WL 2211079, at *3–4 (E.D.N.Y. May 22, 2019) (denying leave to amend complaint because proposed amended claims would fail due to the defendants' official immunities and reasoning that "an amendment is futile if it would fail to state

a plausible claim for relief or if an affirmative defense, *e.g.*, the defendant's immunity, is apparent").

Thus, a proposed amended complaint is futile "if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente*, 310 F.3d at 258. "Put differently, a proposed claim is futile if, accepting the facts alleged by the party seeking amendment as true and construing them in the light most favorable to that party, it does not 'plausibly give rise to an entitlement to relief.'" *Brach Fam. Found., Inc. v. AXA Equitable Life Ins. Co.*, No. 16-CV-740 (JMF), 2018 WL 1274238, at *1 (S.D.N.Y. Mar. 9, 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Similarly, a proposed amended complaint is futile if the claims would be properly dismissed under Fed. R. Civ. P. 12(b)(1) as barred by sovereign immunity. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (affirming the district court's conclusion that dismissal pursuant to Fed. R. Civ. P. 12(b)(1) was warranted because the claims were barred by sovereign immunity).

"The party opposing a motion to amend," in this case, the United States, "bears the burden of establishing that amendment would be futile." *Aboah v. Fairfield Healthcare Servs., Inc.*, No. 3:20-CV-763 (SVN), 2022 WL 443253, at *4 (D. Conn. Feb. 14, 2022) (citation and internal quotation marks omitted). Moreover, "[i]n reviewing a *pro se* complaint, the Court takes into consideration the plaintiff's lack of legal training and holds the complaint to 'less stringent standards than formal pleadings drafted by lawyers.'" *Roberts v. Internal Revenue Servs.*, 468 F. Supp. 2d 644, 649 (S.D.N.Y. 2006) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir. 1997)). *See also Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (noting that the "special solicitude" typically afforded to *pro se* litigants often involves "liberal construction of pleadings, motion papers, and . . . briefs").

### B. Sovereign Immunity

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "The sovereign immunity of the United States may only be waived by [a] federal statute[.]" *Presidential Gardens Assocs. v. United States*, 175 F.3d 132, 139 (2d Cir. 1999) (citation omitted). Specifically, "[a] waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied. . . . Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted). If there is an explicit waiver, the substantive claim must fall within the scope of the waiver for the waiver to apply. *See United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003). Because the doctrine of sovereign immunity is jurisdictional in nature, "the plaintiff bears the burden of establishing," by a preponderance of the evidence, "that her claims fall within an applicable waiver." *Makarova*, 201 F.3d at 113.

## III. COUNTS ONE, TWO, AND THREE

### A. 26 U.S.C. § 7433

Counts One, Two, and Three of the proposed FAC raise claims pursuant to 26 U.S.C. § 7433(a). That statute provides: "If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence, disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States." 26 U.S.C. § 7433(a). This provision constitutes a waiver of sovereign immunity, subject to certain requirements which must be satisfied. *Gavigan v. Comm'r*,

No. 3:06-CV-942 (PCD), 2007 WL 1238651, at *8 (D. Conn. Apr. 27, 2007) (explaining that "[t]he United States consents to be sued by a taxpayer in district court in actions relating to the collection of federal taxes" pursuant to § 7433(a), but noting the exhaustion of remedies requirement); *Kuhl v. United States*, 467 F.3d 145, 148 (2d Cir. 2006) (explaining that "taxpayers must comply with the letter of the government's narrow waiver of sovereign immunity in order to get [a § 7433(a) claim] to federal court").

*1. Exhaustion and Timeliness*

Two overlapping requirements, which must be satisfied for the waiver of sovereign immunity contained in § 7433 to apply, are exhaustion of administrative remedies and timeliness. *Id.*; *Roberts*, 468 F. Supp. 2d at 650. With respect to exhaustion, the statute provides that a plaintiff cannot bring a § 7433(a) claim "unless the court determines that the plaintiff has exhausted the administrative remedies available to such plaintiff within the Internal Revenue Service." 26 U.S.C. § 7433(d)(1). With respect to timeliness, a § 7433 claim must be brought in federal court no later than two years after the "the date the right of action accrues," which is when the taxpayer "has had a reasonable opportunity to discover all essential elements of a possible cause of action." 26 U.S.C. § 7433(d)(3); 26 C.F.R. § 301.7433-1(g)(2). *See also Keohane v. United States*, 669 F.3d 325, 329 (D.C. Cir. 2012) (noting that § 301.7433-1(g)(2) "sets a relatively low bar"). However, the administrative process does *not* toll the two-year limitations period. 26 U.S.C. § 7433(d)(3); 26 C.F.R. § 301.7433-1(g)(1).

Recognizing the overlapping nature of these obligations, a § 7433 cause of action is timely and properly exhausted if filed within one of three possible time frames. *See Tenpenny v. United States*, 490 F. Supp. 2d 852, 858 (N.D. Ohio 2007) (explaining the overlapping timeliness and administrative exhaustion requirements). First, a federal cause of action is proper if filed after the

11

IRS has issued a decision on the administrative claim, assuming that the two-year limitation period has not elapsed. 26 C.F.R. § 301.7433-1(d)(1)(i). Here, Kraus alleges that he filed an administrative claim regarding Counts One, Two, and Three on February 24, 2022. FAC ¶ 3. The IRS has not yet issued a decision on that claim; therefore the first possible time frame for his federal cause of action does not apply.

Second, a federal cause of action is proper if the administrative claim has been pending with no decision for six months and the two-year limitation period has not elapsed. 26 C.F.R. § 301.7433-1(d)(1)(ii). Kraus does not dispute that less than six months have passed since he filed his administrative claim; therefore, this time frame does not apply.

Finally, a federal cause of action is proper if the administrative claim was filed with less than six months remaining on the two-year limitation period *and* the federal cause of action was filed anytime thereafter but before the expiration of the two-year limitation period. 26 C.F.R. § 301.7433-1(d)(2). The United States contends that Kraus cannot satisfy this third time frame because it applies only when some amount of time remains on the two-year limitation period, but here the two-year limitation period elapsed long ago. For his part, Kraus contends that he did not discover the final essential element of his claims—namely, that the IRS did not assess a penalty against Brandow or Di Mase, thus evidencing the conspiracy—until February of 2022, in the course of discovery for this litigation. Accordingly, Kraus contends, the two-year limitation period began to run in February of 2022, and has not yet expired. Accepting Kraus' reasoning, however, Kraus' claims appear unexhausted. Assuming without deciding that Kraus is correct about the importance of his discovery that the IRS assessed a penalty against him alone, § 301.7433-1(d)(2)

cannot render his federal claims properly exhausted because more than six months would remain in the two-year limitation period.

Thus, none of the three avenues to exhaust a § 7433 claim apply here, meaning that Kraus has not exhausted the claims raised in Counts One, Two, and Three of the proposed FAC. Anticipating this result, Kraus has asked the Court to excuse the administrative exhaustion requirement on the ground that the administrative process would be futile. *See United States v. Khan*, 540 F. Supp. 2d 344, 350 (E.D.N.Y. 2007) (noting that exhaustion of administrative remedies, required for a habeas corpus claim challenging the conditions of the petitioner's confinement, is excused where the petitioner demonstrates that the administrative process would be futile); *M.G. v. N.Y.C. Dep't of Educ.*, 15 F. Supp. 3d 296, 303 (S.D.N.Y. 2014) (noting that exhaustion of administrative remedies under the Individuals with Disabilities in Education Act is excused where the plaintiff demonstrates that exhaustion would be futile under the circumstances). Kraus claims that IRS can no longer decide the administrative claim because the filing of the counterclaim in this action by the United States "transferred control of all matters regarding this tax away from the IRS to the DOJ." ECF No. 49 at 4. He also contends that, even if IRS retains authority over the administrative claim, it has "demonstrated a pattern of bias" and failure to respond on past administrative matters, *id.*, so any efforts to pursue the administrative claim would be futile.

However, Kraus identifies no case, nor has this Court found one, in which an unexhausted § 7433 claim was nevertheless permitted due to futility of the administrative process. Given that a waiver of sovereign immunity must be "strictly construed," the Court cannot conclude, by a preponderance of the evidence, that Kraus' failure to exhaust administrative remedies may be

13

excused because it would be futile. *Lane*, 518 U.S. at 192 (citations omitted); *Makarova*, 201 F.3d at 113.

### 2. Collection Practices

More importantly, the Court concludes that, even if Kraus' § 7433 claims were timely and properly exhausted, Counts One, Two, and Three do not fall within the scope of the limited waiver of sovereign immunity provided by the statute to challenge improper collection practices. As noted, § 7433 provides a cause of action and waiver of sovereign immunity for taxpayers whose federal taxes were *collected* negligently, recklessly, or intentionally in violation of the Internal Revenue Code. At least two courts in this district have explained that § 7433 "does not create a cause of action for reckless or intentional conduct by an IRS employee in the *determination* of a federal tax, but only for reckless or intentional conduct by an IRS employee in the *collection* of a federal tax." *Ludtke v. United States*, 84 F. Supp. 2d 294, 301 (D. Conn. 1999) (emphasis added) (citing *Shaw v. United States*, 20 F.3d 182 (5th Cir.), *cert. denied*, 513 U.S. 1041 (1994)). *Cf. Schadl v. Kupinse*, No. 3:99CV844 (AWT), 2001 WL 471891, at *4 (D. Conn. Jan. 21, 2011) (citing *Shaw*, 20 F.3d at 184, for the proposition that § 7433 related only "to the collection, and not to the assessment of taxes").

The Fifth Circuit case on which *Ludtke* and *Schadl* rely, *Shaw*, provides instructive reasoning. In *Shaw*, the Fifth Circuit explained that a § 7422 claim for improper assessment and refund requires the taxpayer to "demonstrate why no taxes are owed," whereas a § 7433 claim for improper collection practices requires the taxpayer to "demonstrate that the IRS did not follow the prescribed methods of acquiring assets." *Shaw*, 20 F.3d at 184. *See also Hohman v. Eadie*, 894 F.3d 776, 782 (6th Cir. 2018) (explaining that the assessment of a tax "involves the decision to impose tax liability while the collection deals with the IRS attempting to collect the taxes owed").

The court in *Shaw* found further support for this distinction in the legislative history of § 7433, which had originally permitted a taxpayer to sue for damages in connection with "the determination or collection of" any federal tax, but was subsequently narrowed to limit the scope to collection practices alone. *Shaw*, 20 F.3d at 184. Accordingly, even though it was undisputed that the IRS' assessment of a tax against Shaw was improper, the court held that the IRS "did not engage in improper collection procedures" and dismissed the plaintiff's § 7433 claim. *Id.*

Although the Second Circuit has not directly considered the scope of § 7433, many other circuits have followed the reasoning of the Fifth Circuit and concluded that the IRS' determination of tax liability cannot constitute a basis for a § 7433 claim. The Tenth Circuit dismissed a § 7433 claim in which the plaintiff claimed "that she did not owe the taxes the IRS sought to collect" because the plaintiff did not "allege specific facts suggesting that the IRS failed to follow the prescribed procedures for collecting from her." *Myers v. United States*, 593 F. App'x 814, 817 (10th Cir. 2014). The Seventh Circuit dismissed a § 7433 claim by reasoning that, "[a]t its heart, [the] plaintiffs' complaint seeks to undo their tax liability because they claim the IRS illegally imposed those taxes," but such a claim was properly raised under § 7422 for a refund, not § 7433. *Goldberg v. United States*, 881 F.3d 529, 535 (7th Cir.), *cert. denied*, 138 S. Ct. 1564 (2018). *Accord Gonsalves v. Internal Revenue Servs.*, 975 F.2d 13, 16 (1st Cir. 1992) (dismissing § 7433 claim because "[t]he essence of [the plaintiff's] claim is that the [IRS] violated the tax laws by refusing to give him a refund because he was exempt from paying taxes during the years in question," however a taxpayer wishing "to challenge the IRS' calculation of their tax liability" must file a refund action pursuant to § 7422). At least three other circuit courts have similarly held that § 7433 "is limited to actions taken in connection with the collection of taxes. A taxpayer cannot seek damages under § 7433 for improper assessment of taxes." *Bjerke v. Freemyer*, 25 F.

App'x 577, 578 (9th Cir. 2001). *See also Robertson v. United States*, 147 F. App'x 308, 310 (3rd Cir. 2005); *Kim v. United States*, 632 F.3d 713, 716–17 (D.C. Cir. 2011).

Here, Counts One, Two, and Three of the FAC clearly pertain to the IRS' assessment of Kraus' tax liability. As noted above, Count One claims civil conspiracy arising from the IRS officers' alleged collaboration with Brandow, the DPCC employee responsible for the withheld taxes, to ensure that Kraus bore the penalty. FAC ¶¶ 130, 132, 135, 139. This conspiracy allegedly motivated the IRS' determination of Kraus' tax liability; therefore, it pertains to assessment, not collection, of tax. Similarly, Counts Two and Three claim reckless, intentional, and negligent disregard of the Internal Revenue code by IRS officers. *Id.* ¶ 145, 148. Although Kraus alleges that such conduct pertained to "the collection of taxes in this matter," the substance of his § 7433 claims centers on the IRS' improper reliance on his allegedly forged signature when determining his tax liability. *See Goldberg*, 881 F.3d at 534 ("The problem for [the] plaintiffs here is that they do not allege any misconduct related to the tax collection process. Instead, they claim the IRS violated the tax code when assessing their tax liability."). Kraus does not allege facts suggesting that the IRS violated the Internal Revenue Code when acquiring his assets; rather, he contends that its decision to impose the penalty in the first place violated the Code. *See Myers*, 593 F. App'x at 817. However, the plain text of § 7433 and the legislative history clearly indicate that "Congress intended to limit the relief available to taxpayers" with respect to the assessment of taxes. *Schadl*, 2001 WL 471891, at *4.

Accordingly, it is clear that Counts One, Two, and Three of the proposed FAC do not fall within the scope of the limited waiver of sovereign immunity provided by § 7433, therefore sovereign immunity bars those claims. *White Mountain Apache Tribe*, 537 U.S. at 472 (explaining that "[j]urisdiction over any suit against the [United States] requires a clear statement from the

16

United States waiving sovereign immunity . . . together with a claim falling within the terms of the waiver"). Because Counts One, Two, and Three would be futile, the Court must deny Kraus' motion to amend with respect to those claims.

### IV. COUNTS FOUR, FIVE, AND SIX

Counts Four, Five, and Six of the proposed FAC seek declarations that Kraus had no authority to sign bank loan documents on behalf of DPCC under its operating agreement; that Kraus' CEO title conferred no authority under Missouri law; and that the IRS did not have a sufficient evidentiary basis on which to hold him responsible for DPCC's failure to pay the payroll taxes. FAC ¶¶ 154–55, 162, 169. Although the FAC does not explicitly reference the Declaratory Judgment Act, such statute is the only relevant basis for these claims.

The Declaratory Judgment Act, 28 U.S.C. § 2201(a) (the "DJA"), provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration," and that such declaration "shall have the force and effect of a final judgment or decree[.]" However, the DJA does not waive the sovereign immunity of the United States. *Sec. & Exch. Comm'n v. Credit Bancorp., Ltd.*, 297 F.3d 127, 137 (2d Cir. 2002). On the contrary, the DJA specifically excepts from its scope any declaration "with respect to Federal taxes[.]"[1] 28 U.S.C. § 2201(a). "Thus, whether or not [the DJA] waives the sovereign immunity of the United States with respect to other types of actions, it explicitly excludes from any such waiver the power to declare rights or obligations with respect to federal taxes." *Credit Bancorp., Ltd.*, 297 F.3d at 137.

Consequently, "courts routinely dismiss requests for judgments declaring federal tax obligations, even in the face of 'lengthy recital[s] of assumed violations of constitutional rights.'"

---

[1] This exception contains further exclusions not relevant to the present action.

*Clavizzao v. United States*, 706 F. Supp. 2d 342, 347 (S.D.N.Y. 2009) (quoting *Jolles Found. v. Moysey*, 250 F.2d 166, 170 (2d Cir 1957)).  Indeed, one district court in this circuit dismissed a DJA claim in circumstances analogous to the present case, in which a *pro se* plaintiff sought refund of a penalty arising from unpaid employment withholding taxes and a declaration that the plaintiff was not the "responsible party" against whom such penalty may be assessed. *Mangione v. Internal Revenue Servs.*, No. 97 Civ. 9439 (JGK), 1998 WL 401538, at *1 (S.D.N.Y. July 17, 1998).  The court reasoned that the DJA could not serve to waive sovereign immunity or otherwise provide a basis for subject matter jurisdiction because the statute "expressly precludes" granting declaratory relief with respect to federal taxes. *Id.* at *3.  Likewise, Kraus cannot find a waiver of the United States' sovereign immunity in the DJA to support his DJA claims.

Kraus contends that Counts Four and Five seek declarations interpreting the DPCC operating agreement and Missouri law respectively.  The Court is not convinced, however.  These declarations are plainly meant to inform the propriety of the penalty assessed against him.  By Kraus' own theory of the case, the DPCC operating agreement and relevant Missouri law inform the question of whether the IRS had a sufficient evidentiary basis to conclude that he was the person responsible for withholding the payroll taxes.  As such, the DJA's exclusion of federal tax claims, and the absence of any waiver of sovereign immunity in the DJA, render Counts Four, Five, and Six of the proposed FAC futile.  Therefore, the Court must deny Kraus' motion to amend the complaint with respect to these three counts.  However, the Court notes that denial of the motion to amend with respect to these three counts will not foreclose Kraus from reiterating the substantive arguments raised therein at later stages of the case to support of his claim for refund and abatement.

## V.     CONCLUSION

For the reasons described above, Kraus' motion to amend his complaint, ECF No. 47, is DENIED.  In addition, as noted above, Kraus' motion to amend his answer to the United States' counterclaim, ECF No. 43, is GRANTED.

**SO ORDERED** at Hartford, Connecticut, this 1st day of August, 2022.

                                         */s/ Sarala V. Nagala*
                                         SARALA V. NAGALA
                                         UNITED STATES DISTRICT JUDGE